FILED
JUL 2 7 2005
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 04-30068 |
| Plaintiff, | |
| -vs- | ORDER AND OPINION |
| JAMES ALLEN GREGG, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant filed a motion (Doc. 158) pursuant to Fed.R.Crim.P. 12(b)(3)(B) to dismiss the indictment. The government filed a response (Doc. 164). Defendant filed a reply (Doc. 171). Oral argument was requested and that request should be denied.

The essence of defendant's motion is based on the claim that Congress had no authority under the Indian Commerce Clause of the United States Constitution (or any other authority) to charge the defendant with murder or the discharge of a firearm without alleging and proving that the charges had some connection, whether interstate, foreign, or Indian, with commerce. The defendant asks the court to declare the Indian General Crimes Act ("IGGA"), 18 U.S.C. § 1152, unconstitutional.

The defendant attempts to rely upon fairly recent Supreme Court cases striking down federal laws not meeting the requirements of the Commerce Clause. This includes United States v. Morrison, 529 U.S. 598 (2000) (the Violence Against Women Act, 42 U.S.C. §13981), and United States v. Lopez, 514 U.S. 549 (1995) (the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(g)).

I reject the argument of defendant that Morrison and Lopez have by way of implication overruled the "wards of the nation" holdings in a line of cases beginning with United States v. Kagama, 118 U.S. 375 (1886). Congress has and had "the undoubted constitutional power to prescribe a criminal code applicable in Indian country." United States v. Antelope, 430 U.S. 641,

648 (1977). It is "of no consequence that the federal scheme differs from a state criminal code otherwise applicable within the boundaries of the State . . ." *Id.* *See also* Keeble v. United States, 412 U.S. 205 (1973). Morrison and Lopez have nothing to do with Indian country and relationships between the United States and the various tribes. Tribes are unlike state governments.

I agree with and adopt the reasoning expressed in United States v. Houser, 130 F.3d 867 (9th Cir. 1997). There is no doubt that Congress, since the early days of the Republic, has exercised its power (often to the terrible and unfair detriment of Indians and Indian tribes) to regulate all manner of relations between non-Indians and Indians in Indian Country. Indian tribes do indeed have a unique relationship with the federal government. Unlike states, Indian tribes are "domestic dependent nations" and retain all powers of government not extinguished by an express act of Congress or otherwise inconsistent with the dependent status of the tribes. The Indian Commerce Clause permits Congress to regulate all interaction between non-Indians and Indians in Indian country. Congress has plenary power to legislate in the field of Indian affairs.

The primary problem with defendant's arguments is that the United States Constitution was drafted in part to deny the federal government general police powers that reposed in the states. Indian tribes, unlike the original states, had no connection with and no involvement in the drafting and the adoption of the United States Constitution. They had no connection with the give and take which resulted in the adoption of the United States Constitution and the Bill of Rights. They had no connection with The Enabling Act of February 22, 1889, Ch. 180, 25 Statutes at Large 676, by which South Dakota entered the Union. Thus, Indians and Indian tribes, *vis a vis* the federal government, do not stand on the same footing as the states *vis a vis* the federal government. Prior to the enactment of The Enabling Act, the so-called "Organic Law" was enacted on March 2, 1861, Ch. 86, 12 Statutes at Large 239, establishing the Dakota Territory. The Act specified, *inter alia,* that "nothing in this act contained shall be construed to impair the rights of person or property now pertaining to the Indians in said territory, so long as such rights shall remain unextinguished by treaty between the United States and such Indians

. . . or to affect the authority of the government of the United States to make any regulations respecting such Indians, their lands, property, or other rights, by treaty, law, or otherwise, which it would have been competent for the government to make if this act had never passed . . ."

This defendant, if not prosecuted in federal court, would not be prosecuted at all. The tribal court, absent express Congressional authorization (which does not exist), would have no authority to prosecute him. Oliphant v. Suquamish Indian Tribe, 435 U.S. 191 (1978). He could not be prosecuted by the State of South Dakota for crimes committed against an Indian in Indian country. Seymour v. Superintendent, 368 U.S. 351 (1962), and Kills Plenty v. United States, 133 F.2d 292 (8th Cir. 1943). Kills Plenty describes how South Dakota in 1901 legislatively ceded to the United States "exclusive jurisdiction and authority to arrest, prosecute, convict and punish all persons whomsoever who shall, upon any Indian reservation within the state of South Dakota, commit any act in violation of the penal laws of the United States." Defendant argues that Kills Plenty is a "red herring" because the statute in question no longer exists. I do not see that as significant. South Dakota attempted legislatively in the early 1960's (within a window permitted by federal law, Public Law 280) to establish jurisdiction in Indian Country but such legislative act was soundly rejected by the voters and never became law. The court takes judicial notice of that historical fact. That window is now closed and no South Dakota legislative act, including SDCL 23A-16-1, can open the window. Congress occupies the field and occupied the field when defendant committed the crimes. What the situation may be in other states has no significance in this case. "To determine which sovereign has jurisdiction over a particular offense, a court must evaluate whether the defendant and victim is Indian or non-Indian . . . If the defendant is a non-Indian and the victim is an Indian, federal courts have exclusive jurisdiction over the offense. See D. Getches & C. Wilkinson, Federal Indian Law 412-15 (2d ed. 1986)." St. Cloud v. United States, 702 F.Supp. 1456,1459 (D.S.D. 1988).

Native Americans have historically, by virtue of treaties entered into with the United States claimed the "protection" of the United States. They have agreed that the United States has the right "to regulate all trade and intercourse with them." See Article One of the treaty with the Hunkpapas Band of the Sioux Tribe, 1825. See also Article One of the treaty with the Sioune and Ogallala Tribes, 1825. "And, in like manner, if any robbery, violence, or murder, shall be

3

committed on any Indian or Indians belonging to the said band, the person or persons so offending shall be tried, and if found guilty, shall be punished in like manner as if the injury had been done to a white man." Article Five, Hunkpapas Treaty and Sioune and Ogalla Treaty. "In consideration of the rights and privileges acknowledged in the preceding article, the United States bind themselves to protect the aforesaid Indian nations against the commission of all depredations by the people of the said United States, after the ratification of this treaty." Article 3, Treaty of Fort Laramie, 1851. Numerous treaties with tribes in 1865 included pledges from the United States to protect "against any annoyance or molestation on the part of whites or Indians." "If bad men among the whites, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington City, proceed at once to cause the offender to be arrested and punished according to the laws of the United States . . ." Article One, Treaty with the Sioux-Brule, Oglala, Miniconjou, Yanktonai, Hunkpapa, Blackfeet, Cuthead, Two Kettle, Sans Arcs, Santee, and Arapaho, 1868.

  The United States, while failing to comply with other treaty obligations, has at least complied with these treaty obligations.

  I also reject the argument of defendant that the prosecution in this case violates his Fifth Amendment due process right to equal protection. Any prosecution and conviction in federal court entails no possibility of parole; that applies to all defendants. Any prosecution and conviction in federal court involving the discharging of a firearm in a federal crime of violence under 18 U.S.C. § 924(c) requires a ten year mandatory minimum sentence; that applies to all defendants. None of the statutes involved in this case involve impermissible racial classifications. See United States v. Antelope, 430 U.S. 641, 645 (1977), and Morton v. Mancari, 417 U.S. 535, 552 (1974). An earlier cited case from the District of South Dakota is also on point. "Criminal jurisdiction in Indian country does not rely on a racial classification but depends on whether a person enjoys the unique status of sufficient links to a formerly sovereign nation to be an 'Indian.' United States v. Antelope, 430 U.S. 641, 646 . . . " St. Cloud at 1459.

  An examination for "strict scrutiny" is not required here. An examination for "rational

4

basis" easily passes here. What could be more rational than ensuring that a defendant like this defendant be subject to prosecution somewhere under the facts of this case?

The motion should be denied.

NOW, THEREFORE,

IT IS ORDERED, as follows:

1) The request for oral argument by the defendant is denied.

2) The motion (Doc. 158) to dismiss the indictment is denied.

Dated this 27th day of July, 2005.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY:
    DEPUTY
(SEAL)

5