UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



FILED
DEC 07 2020
[signature] CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES ALLEN GREGG,<br><br>Defendant. | 1:04-30068-CBK<br><br>ORDER |

Defendant was convicted by a jury of second-degree murder and use of a firearm during a crime of violence. He was sentenced on September 30, 2005, to 135 months imprisonment on the murder charge, to run consecutive to a sentence of 120 months imprisonment on the firearms charge, for a total sentence of 255 months. His convictions and sentences were affirmed by the United States Court of Appeals for the Eighth Circuit. United States v. Gregg, 451 F.3d 930 (8th Cir. 2006). He filed a motion to vacate, set aside, or correct his convictions and sentences on the basis of ineffective assistance of counsel, which motion was denied following an evidentiary hearing. He appealed and the Eighth Circuit affirmed. Gregg v. United States, 683 F.3d 941 (8th Cir. 2012) (on rehearing). The United States Supreme Court denied a petition for writ of *certiorari*. Gregg v. United States, 569 U.S. 972, 133 S.Ct. 2338, 185 L.Ed.2d 1064 (2013).

Gregg filed two requests with the Eighth Circuit seeking to file a second or successive habeas petition and those requests were denied. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District of Minnesota contending that the United States Supreme Court's decisions in Johnson v. United States, 135 S. Ct. 2251 (2015) and Sessions v. Dimaya, 138 S.Ct. 1204 (2018), entitled him to relief. The motion was denied and affirmed on appeal. Gregg v. Paul, 19-cv-105 (JNE/LIB), 2019 WL 2437218 (D. Minn. 2019), aff'd, 19-2338, 2019 WL 7169100 (8th Cir. 2019). Gregg filed a petition for a writ of mandamus in the Eighth Circuit attacking his convictions and sentences, which was denied. Gregg filed a motion to vacate, set aside, or correct sentence, which he requested be held in abeyance pending the

outcome of yet another request to file a successive petition filed in the Eighth Circuit. The basis of the new motion and request for successive petition was the United States Supreme Court's decision in United States v. Davis, ___ U.S. ___, 139 S. Ct. 2319, 204 L. Ed. 2d 757 (2019). The Eighth Circuit denied the request on October 1, 2020.

Defendant has filed a motion for compassionate release. The Bureau of Prisons ("BOP") has calculated defendant's current release date as February 24, 2023. https://www.bop.gov/inmateloc/ visited December 4, 2020.

The Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, § 212, authorized, *inter alia*, the district court, upon motion of the Director of the BOP, to reduce a prison term after considering the factors set forth in 18 U.S.C. § 3553(a), "if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission issued Guidelines § 1B1.13 setting forth the Commission's policy statement on compassionate release, which were consistent with § 3582(c).

Pursuant to the First Step Act of 2018, the district court is now authorized to grant compassionate release upon motion of a defendant after the exhaustion of administrative remedies. Pub. L. 115-391, § 603(b), 18 U.S.C. § 3582(c)(1)(A). The government contends that defendant has not exhausted his administrative remedies. I need not address that issue because, as set forth below, I find that the defendant is not entitled to compassionate release.

In evaluating a request for compassionate release, the district court is required to consider the factors set forth in section 3553(a), to the extent that they are applicable, and may reduce defendant's sentence of imprisonment if it finds that

(1) (a) extraordinary and compelling reasons warrant such a reduction, or

(b) the defendant is at least 70 years of age and has served at least 30 years in prison for the offense or offenses for which the defendant is currently imprisoned

and

(2) the defendant is not a danger to the safety of any other person or the community.

18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13.

2

Defendant requests compassionate release based upon his medical conditions, including a history of asthma, epilepsy and seizure disorder, suspected cardiac arrhythmia, and the fact that COVID 19 is wide-spread in the BOP system. Chief Judge Lange has observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

United States v. Frost, 2020 WL 3869294, at *4 (D.S.D. July 9, 2020) *citing* United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant is not currently receiving treatment for any acute condition. He was apparently receiving physical therapy for a 2014 knee injury until the COVID-19 lockdown – which lockdown was intended to protect defendant and others from the spread of the pandemic. Due to a family history of cardiac disease, in 2018 an echocardiogram was performed which showed only borderline cardiac concerns. He currently suffers from hyperlipidemia (high cholesterol). Defendant has been prescribed an anti-seizure medication for anxiety, as well as two other medications for depression or anxiety. It appears from his records that defendant is a healthy 39 year old with no current medical conditions that place him at a high risk for death or serious complications from COVID-19.

Defendant requests immediate release. His request amounts to a request for re-sentencing to a term of time served, nearly 191 months. He proposes that he be released to reside with his sister in Lawrence County, South Dakota. Lawrence County has a population, as of 2019, of 25,844. There have been 2,152 cases of COVID-19 in Lawrence County, a rate of over 8%. https://doh.sd.gov/COVID/Dashboard.aspx, visited December 4, 2020. Lawrence County currently has a positivity test rate of 14%. *Id.* Alternatively, defendant suggests that he could live in Canistota, which is in McCook County (28% positivity rate), receive inpatient treatment at the Ft. Meade V.A. clinic in Meade County (15% positivity rate), or reside on his parent's ranch in rural Hughes County (20% positivity rate).

3

Petitioner is housed at the Federal Medical Center in Rochester, Minnesota. That institution currently has zero inmate confirmed cases of COVID-19. https://www.bop.gov/coronavirus/, visited December 4, 2020. There have only ever been 103 inmate cases at FMC Rochester, with all inmates having recovered. *Id.* There have been no inmate deaths at that facility. South Dakota, on the other hand, currently has the highest average per capita cases during the last seven days and the highest average per capita deaths during the last seven days in the nation. https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days visited December 4, 2020. South Dakota in now ranked as the riskiest state to visit by the Harvard-Brown risk assessment tool. Kelleher, Suzanne Rowan. "Covid-19 Alert: The 10 Riskiest States to Visit a Week After Thanksgiving, Ranked." Forbes, December 5, 2020. https://www.forbes.com/sites/suzannerowankelleher/2020/12/05/covid-19-alert-the-10-riskiest-states-to-visit-a-week-after-thanksgiving-ranked/?sh=6c0a1b2d6bb2 visited December 7, 2020. South Dakota's risk level is 366% above the threshold for being considered "at a tipping point." *Id.* The risk of infection for one residing in South Dakota is now apparently higher than the risk of one residing at the Federal Medical Center in Rochester, Minnesota.

South Dakota has done little, if anything, to curtail the spread of the virus. The annual motorcycle rally this summer in Sturgis, South Dakota, was a virus "spreader." The Governor has steadfastly refused to impose a statewide mask mandate. She has often questioned publicly the scientific fact that mask wearing prevents the virus from spreading. She appeared at a dedication ceremony for a large 3M Company manufacturing plant expansion – to allow 3M to produce even more N95 respirators needed by front-line healthcare workers – as the only public official not wearing a mask. Her example significantly encourages South Dakotans to not wear masks. South Dakota is a very dangerous place in which to live and the extent of the spread of COVID-19 proves it.

I reject defendant's claim that he is entitled to compassionate release. I find that the COVID-19 public health emergency does not warrant defendant's release.

I further reject defendant's claim that he is entitled to compassionate release because I specifically find that his earlier release is not in the interests of justice. I was the trial judge. Defendant was convicted of shooting a man in the back five times (he shot nine rounds). The case was not as simple as that – there had been confrontations between defendant and the victim earlier in the prior evening. Defendant claimed he drove to the victim's residence in an attempt

4

to resolve their previous disagreement. Defendant, a veteran who had served in Iraq until four months prior to the offense, had a handgun in the front passenger area of his pickup. Defendant contended that the victim came towards the defendant's pickup, tried to open the door in a threatening matter, and only stopped when defendant picked up the firearm. At that time the victim is alleged to have made a statement to the effect that he also had guns and he retracted towards his vehicle or house. At that time the defendant opened fire upon the victim. The defendant could have elected not to go to the victim's house after their earlier confrontation. Defendant could have left when the victim came out of his house, allegedly with fighting words. Defendant could have left when the victim turned around and left the defendant in his pickup. The jury found that, at the time the defendant fired upon the victim, the defendant acted with malice aforethought. The jury rejected the contention that the defendant acted with premeditation. One thing is clear from the evidence and the jury's verdict – the defendant killed a 26 year-old man. For that crime he was sentenced to serve 135 months. He has now served that sentence and is serving the 120 month consecutive sentence for use of a firearm during a crime of violence.

I have considered the entire file, including the trial and sentencing transcripts, and the defendant's medical records from the BOP. I have also considered all of the statutory factors set forth in 18 U.S.C. §3553(a), which weigh heavily against the release of the defendant.

As to his health concerns, he will receive far better medical care and monitoring in the custody of the Bureau of Prisons (BOP) at a federal medical facility than he will receive at a veteran's clinic in South Dakota. People in this state are not safe.

Now, therefore,

IT IS ORDERED that defendant's motion, Doc. 299, for compassionate release is denied.

DATED this 7th day of December, 2020.

BY THE COURT:

*[signature]*

CHARLES B. KORNMANN
United States District Judge